SMITH, et al, Appellants, v. LYLE, Respondent.

(241 N. W. 512.)

(File No. 6742.   Opinion filed March 15, 1932.)

For former opinion, see 58 S. D. 510, 237 N. W. 723.

*T. B. Thorson,* Special Counsel, Banking Department, of Rapid City, *J. H. Lammers,* of Wessington Springs, *Roy E. Willy,* of Sioux Falls, and *Null & Royhl,* of Huron, for Appellants.

*E. E. Wagner* and *Florence Ryan Foss,* both of Mitchell, for Respondent.

POLLEY, J. This cause is here on rehearing. The former opinion will be found in 58 S. D. 510, 237 N. W. at page 723. The case was decided on the authority of Smith v. Fischer, 58 S. D. 510, 237 N. W. 718; but in a petition for rehearing filed by the respondent it is contended that certain issues are presented in this case that were not involved in the Fischer Case.

It is first contended in the petition for rehearing that under the rule announced in the Fischer Case the cause of action sued on in this case is barred by the statute of limitations. In the Fischer Case we held that the six-year statute of limitations applied (subdivision 2, § 2298, Rev. Code 1919), but in that case the cause

of action itself arose within six years prior to the commencement of the action, while in this case the cause of action arose more than six years prior to the commencement of this action, which was on the 26th day of June, 1926. This is conceded by the appellants, but it is contended by appellants that the question of limitations in this action is governed by the provisions of section 2274, Rev. Code 1919. This section provides that actions to enforce a liability created by statute must be commenced within six years after the discovery by the aggrieved party of the facts upon which the liability is based. In other words, in an action brought to enforce a statutory liability, the running of the statute of limitations does not commence to run until the aggrieved party has discovered the facts upon which the liability is based. The facts relative to this phase of the case are as follows: E. C. Lyle, defendant's intestate, was a director of the bank during the years 1918-19 and up to the 13th day of January, 1920, when he retired from the board of directors; and appears to have taken no further part in the affairs of the bank. It was during the time that he was a director that the excess loans involved were created.

The cause of action sued upon in this case accrued immediately upon the making of the excessive loans. Farmers' State Bank et al v. Youngers et al, 47 S. D. 592, 200 N. W. 1019. Therefore, the cause of action accrued more than six years prior to the commencement of the action, and the only question to be determined in this case is: When did the running of the statute commence?

Defendant contends: First, that the running of the statute commenced immediately upon the accrual of the cause of action, but this could not be because the aggrieved parties, creditors and depositors, had no knowledge of the facts. It is true that the cause of action was in favor of the bank and that the board of directors represented the bank, but they, themselves, were the wrongdoers; their interests were adverse to the interests of the bank, therefore their knowledge cannot be imputed to the bank. Their interests were also adverse to the interests of the creditors and depositors and their knowledge cannot be imputed to the creditors and depositors. Therefore, the statute did not commence to run upon the accrual of the cause of action.

On or about the 5th day of April, 1920, there was filed in the office of the superintendent of banks a verified report made by a public examiner showing the existence of the excess loans involved herein, and it is the contention of the appellants that from that date the superintendent had knowledge of the excessive loans; that he was a representative of the creditors and depositors and that his knowledge of the excess loans must be imputed to the creditors and depositors; and that the running of the statute commenced at that date. With this contention we do not agree. The superintendent of banks prior to taking possession for liquidation was not the representative of the creditors in the sense that knowledge to him would be imputed to the creditors. It is true that under the provisions of section 8925, Revised Code of 1919, the superintendent of banks, upon learning that the directors of the bank were violating the law, had authority to forthwith take possession of the bank and its assets, and to retain such possession until such bank should resume business or its affairs were finally liquidated, but until he does in fact so take possession, his knowledge is not imputed to the depositors and creditors; the superintendent of banks has only such authority as is conferred upon him by statute. Scribner State Bank v. Ransom et al, 35 S. D. 244, 151 N. W. 1023. He is merely an administrative state offficer with general supervisory power over the business of state banks. But this does not make him the representative of the bank or the bank depositors so long as the bank remains open as a going concern, and the filing of this report or the knowledge contained therein did not start the running of the statute.

Defendant places some stress upon the fact that Lyle retired from the board of directors on the 13th day of January, 1920, more than six years prior to the commencement of the action; but we fail to see how this is material. Of course, he could not be held liable for any transactions that took place after he retired from the board, neither would such act of itself on his part start the running of the statute.

Respondent cites and relies upon Curtis v. Metcalf et al (D. C.) 259 F. 961, and Curtis v. Connly et al (same case) (C. C. A.) 264 F. 650. That case is very similar to this. The action was brought by the receiver of a national bank against ex-directors to recover damages caused by bad loans and investments. More than

six years had elapsed after the defendants retired from the board before the action was commenced. The courts, both the District Court and the Circuit Court of Appeals, held the action barred by the six-year statute. The conclusions of these courts seem to have been based largely on lack of reasonable diligence on the part of the creditors, and held that the means of knowledge is the same thing in effect as knowledge itself. But no such statute as section 2274 appears to have been involved, and it was not shown in this case that the creditors had knowledge or means of obtaining knowledge of the conduct of the directors. In his argument respondent says: "That the depositors themselves were bound to take notice of the condition of the bank as disclosed by its books and bring their actions within six years of the time when by the exercise of reasonable diligence, the facts would have been known to them."

But they were not charged with the duty of examining the books of the bank. They had a right to assume that the directors of the bank would perform their duty and not violate the law. If a duty devolved upon any one to acquaint the depositors of the condition of the bank, it was upon the directors; but they having failed to perform this duty, knowledge of their wrongdoing is not to be imputed to the depositors. Again respondent says: "The depositors of a bank, represented as they were, by the directors who succeeded the defendant in the administration of the bank's affairs, and by the superintendent of banks, cannot lie in repose for more than six years after the cause of action accrued, and successfully maintain these actions." This suggestion is answered by the fact that the depositors are not represented by the directors in the sense that the directors act as their agents or that knowledge of the directors is imputed to the depositors, and it is not until the superintendent of banks takes possession of the bank's assets for the purpose of liquidation that he becomes the representative of the depositors. And it is not until such time that knowledge of the superintendent is imputed to the depositors, and not until such time did the statute of limitations, under the evidence in the case, commence to run.

It is also contended by the defendant that there are included, in the balance claimed by the plaintiff to be loans, numerous items which were not loans made by the bank to the parties

named in the exhibits, but were in fact notes given to the individual officers of the bank to be rediscounted elsewhere, and were in fact so discounted and carried by outside banks. Respondent claims this question is not within the issues presented by appellants' appeal, and for that reason is not properly before the court for review, and appellants have filed a formal motion to strike from respondent's brief all that portion thereof relating to said matter. This matter may not be regularly before the court, but it is a material issue and one that must be determined before the case can be finally disposed of. The defendant cannot be held liable for loans that were not in fact carried by the bank and upon which the bank was not liable as an indorser or otherwise. Nor, as provided by section 8980, Rev. Code 1919, shall the discount of commercial paper, actually owned by the person negotiating the same, be considered as money borrowed by such person. But it will be necessary to make further findings of fact and possibly to take further evidence before this issue can be determined.

The judgment and order appealed from are reversed, and the case is remanded to the trial court, with directions that further proceedings be had in conformity with this opinion.

CAMPBELL, P. J., and ROBERTS, WARREN, and RUDOLPH, JJ., concurring.